UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TRIPOINT GLOBAL EQUITIES, L.L.C., a     :
Maryland limited liability company, in  :
its capacity as collateral agent for    :
CIP, L.L.C., a Kansas limited liability :
company and CARL W. GROVER,             :
                                        :
                Plaintiff,              :
                                        :
        -v-                             :
                                        :
ANTONIO R. FASOLINO, FASOLINO FOODS     :
USA, INC., FASOLINO FOODS CO., INC.,    :
FASOLINO ENTERPRISES, INC., and         :    13 Civ. 1030 (DLC)
FASOLINO WINE & SPIRITS, INC.,          :
                                        :    OPINION AND ORDER
                Defendants.             :
                                        :
---------------------------------------- X
                                        :
ANTONIO R. FASOLINO, FASOLINO FOODS     :
USA, INC., FASOLINO FOODS CO., INC.,    :
FASOLINO ENTERPRISES, INC., and         :
FASOLINO WINE & SPIRITS, INC.,          :
                                        :
            Third Party Plaintiffs,     :
                                        :
        -v-                             :
                                        :
CARL W. GROVER, WILLIAM MOORE, CIP,     :
L.L.C., HUNTER, TAUBMAN & WEISS, LLP,   :
STEPHEN WEISS, ESQ. and SUNFLOWER       :
CAPITAL, L.L.C.,                        :
                                        :
            Third Party Defendants.     :
                                        :
----------------------------------------X

APPEARANCES:

For the Plaintiff, Tripoint Global Equities, L.L.C., and Third
Party Defendant, Carl W. Grover:

Gary Lee Mason

Klafter & Mason, L.L.C.
195 Route 9 South, Suite 204
Manalapan, NJ 07726
(732) 358-2028


For the Defendants and Third Party Plaintiffs:

Vincent Savino Verdiramo
Verdiramo & Verdiramo, P.A.
3163 Kennedy Boulevard
Jersey City, NJ 07306
(201) 798-7082


For the Third Party Defendants, CIP, L.L.C., William Moore,
Sunflower Capital, L.L.C.:

Marshall Clinton Turner
Mark T. Benedict
Husch Blackwell Sanders, L.L.P.
190 Carondelet Plaza, Suit 600
St. Louis, MO 63105
(314) 480-1768


For the Third Party Defendants, Stephen A. Weiss and Hunter,
Taubman and Weiss, L.L.P.:

Barry Jacobs
Abrams, Gorelick, Friedman & Jacobson, L.L.P.
One Battery Park Plaza, 4th Floor
New York, NY 10004
(212) 422-1200


DENISE COTE, District Judge:

On May 27, 2013, Antonio R. Fasolino, Fasolino Foods USA,

Inc., Fasolino Foods Co., Inc., Fasolino Enterprises, Inc. and

Fasolino Wine & Spirits Inc. (collectively, "Fasolino"), filed a

third party amended complaint ("Fasolino Complaint") against

2

CIP, L.L.C. ("CIP"), William Moore ("Moore"), Sunflower Capital, L.L.C. ("Sunflower Capital") (collectively, CIP, Moore, and Sunflower Capital as "Kansas Defendants"), Carl W. Grover ("Grover"), Stephen Weiss, Esq. ("Weiss"), and Hunter, Taubman, and Weiss, L.L.P. ("HTW") (collectively, Weiss and HTW as "Lawyer Defendants").  On June 3, Kansas Defendants and Grover moved to dismiss the Fasolino Complaint; on July 12, the Lawyer Defendants did the same.  For the reasons explained in this Opinion, these motions are granted, and the Fasolino Complaint is dismissed in its entirety.

BACKGROUND

Although this Opinion relates only to the third party claims raised in the Fasolino Complaint, the underlying case is central to understanding these claims.  In fact, two of the third party defendants -- CIP and Grover -- are the lenders for whom Tripoint Global Equities, L.L.C. ("Tripoint") is bringing the underlying suit.  It is therefore appropriate to begin with the allegations made in the underlying case, before discussing Fasolino's allegations.

According to the allegations in Tripoint's complaint, on November 14, 2012, Fasolino acquired a $5,000,000 loan from CIP (a Kansas corporation) and Carl Grover, through fraudulent representations regarding his intended use of the funds and

3

regarding the assets he had available to be used as collateral in the event of default.  While Fasolino claimed that he would be using the loaned funds to operate his olive oil business, he secreted the funds into private offshore accounts with no intent to repay the loan.  Moreover, because Fasolino misrepresented his assets, CIP and Grover cannot be made whole by seizing Fasolino's promised collateral.  Accordingly, Tripoint -- as collateral agent on behalf of CIP and Grover -- seeks compensatory, consequential, punitive, treble, and statutory damages under various legal theories, including civil RICO, fraud, breach of contract, conversion, and unjust enrichment.

Fasolino's story differs significantly from that of Tripoint's.  According to Fasolino, he is a wholesale manufacturer and distributer of Italian olive oil who, due to repair work on his factories in Italy, was in need of bridge financing to maintain his contractual obligations with his largest clients, Costco and Target.  Fasolino retained the services of Tripoint to find him suitable lenders, and Tripoint arranged for CIP and Grover to lend Fasolino the necessary funds.

Fasolino was already acquainted with CIP.  On August 6, 2012 (i.e., approximately two months prior to the $5,000,000 loan that is the subject of Tripoint's suit), Fasolino had executed a separate loan with CIP for $150,000, with a total

4

balance due of $250,000 on October 5, 2012 ("CIP Loan 1").  A few weeks later, on August 31, the total balance due on the CIP Loan 1 was subsumed into a new loan from CIP to Fasolino for $1,375,500, with a total balance due of $2,250,000 on November 6 ("CIP Loan 2").  As will be relevant below, the promissory notes for CIP Loan 1 and CIP Loan 2 included a Kansas choice-of-law provision.

On November 14, as part of the transaction that Tripoint facilitated, Fasolino executed a loan agreement with CIP and Grover ("Loan Agreement").  In the Loan Agreement, CIP and Grover agreed to loan Fasolino up to $7,750,000, and to provide $5,000,000 of that upon the execution date of the loan. $2,250,000 of the $5,000,000 was actually an extension of the total balance due on CIP Loan 2, and the remaining $2,750,000 was provided by Grover.  The total amount due in the Loan Agreement was 115% of the principal (which could range from $5,000,000 to $7,750,000, depending on whether Fasolino asked for additional funds), on March 15, 2013.  The Loan Agreement included a New York choice-of-law provision.

Fasolino's legal counsel for the Loan Agreement transaction was Weiss, who is a partner at HTW.  Fasolino alleges that Tripoint directed him to use the legal services of Weiss in order for the transaction to proceed "smoothly."  Fasolino

alleges that, consistent with Tripoint's directive, he relied on Weiss fully to structure the transaction.

At some point after November 14, 2012, CIP and Grover determined that Fasolino was not complying with the terms of the Loan Agreement.  Accordingly, on February 14, 2013, Tripoint -- acting as collateral agent on behalf of CIP and Grover -- filed the underlying suit against Fasolino.  On March 20, 2013, Fasolino filed an answer, counter-claim, and third party complaint.  On May 5 and May 10, the Kansas Defendants and Grover moved to dismiss the third party action against them. The motion was mooted, however, when Fasolino chose to amend his answer, counter-claim, and third party complaint.  On May 27, Fasolino filed his amended pleading, referred to in this Opinion as "Fasolino Complaint."

The gravamen of the Fasolino Complaint is that all of the loans (the CIP Loans and the Loan Agreement) were or are usurious.  He specifically notes the following.  The effective annual interest rate on CIP Loan 1 was 500%.  The effective annual interest rate on CIP Loan 2 was 254%.  The effective annual interest rate on the Loan Agreement was 45%.  Fasolino contends that these rates are usurious, that the loans are thereby rendered unenforceable, and that he is entitled to damages from the third party defendants as a result.  The Fasolino Complaint has nine specified counts.

In Count One, Fasolino alleges that Weiss operated under an undisclosed conflict of interest whereby he actually served Weiss's counter-party, Tripoint, and inter alia acted to structure the transaction to avoid the protection of New York's usury laws.  Count Two is directed against HTW on a respondeat superior theory for Weiss's allegedly tortious conduct.

In Counts Three, Four, Five, and Seven, Fasolino sues CIP, Moore (the alleged principal shareholder of CIP), and Grover for making these usurious loans.  Fasolino seeks to have CIP Loan 1, CIP Loan 2, and the Loan Agreement deemed void, to recoup any payments he made, and to recover damages and other ancillary relief.

In Count Six, Fasolino sues Moore and Sunflower Capital (a corporation alleged to be wholly owned by Moore) for allegedly extorting Fasolino into agreeing to pay an additional $350,000 to have the CIP Loan 2 subsumed into the Loan Agreement.  In Counts Eight and Nine, Fasolino essentially repeats his request for the relief sought in the prior counts.

On June 3, the Kansas Defendants moved to dismiss the Fasolino Complaint.  On the same day, Grover moved for the same, incorporating all the arguments made by the Kansas Defendants. On July 12, Weiss and HTW moved to dismiss also.  The motions were fully submitted as of September 11, 2013.

DISCUSSION

     To survive a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face." Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (citation omitted).  Applying this
plausibility standard is "a context-specific task that requires
the reviewing court to draw on its judicial experience and
common sense." Id. at 679.  When considering a motion to
dismiss under Rule 12(b)(6), a trial court must "accept all
allegations in the complaint as true and draw all inferences in
the non-moving party's favor." LaFaro v. New York
Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  A
complaint must do more, however, than offer "naked assertions
devoid of further factual enhancement," and a court is not
"bound to accept as true a legal conclusion couched as a factual
allegation." Iqbal, 556 U.S. at 678.


A. Usury Claims: Counts Three, Four, Five, Seven

     In Counts Three and Four, Fasolino alleges that CIP Loan 1
and CIP Loan 2 were usurious and thus void.  In Count Five,
Fasolino alleges that the CIP component of the Loan Agreement is
a repackaging of CIP Loan 1 and CIP Loan 2, and it is therefore
also usurious and void.  In Count Seven, Fasolino alleges that
the Grover component of the Loan Agreement is the product of a

8

scheme to avoid the New York usury laws and thus is void. Despite these differences in pleading, Counts Three, Four, Five, and Seven all relate to the basic allegation of usury, and it is prudent to address these counts together.

### 1. CIP Loan 1 and CIP Loan 2

In Counts Three and Four, Fasolino alleges that CIP Loan 1 and CIP Loan 2 are usurious. The first, and indeed pivotal issue, in assessing this allegation is determining the correct law to apply, i.e., determining which state's usury laws to apply.

In a case grounded in diversity jurisdiction, as this case is, a federal court "must apply the choice of law analysis of the forum state." GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, 230 F.3d 549, 556 (2d Cir. 2000). Here, Fasolino makes no allegation of fraud or a violation of public policy, and it is undisputed that the promissory notes for CIP Loan 1 and CIP Loan 2 included a choice-of-law provision

specifying that the contracts are to be "governed by the laws of the State of Kansas."  The only question then is whether Kansas has "sufficient contacts" with these loans.

It certainly does.  CIP, the lender for both loans, is both incorporated in Kansas and has its principal place of business in Kansas.  Additionally, according to the promissory notes for both loans, Fasolino was obligated to pay CIP at its Kansas address.  This means the loaned funds both originated from and were due to be returned to Kansas.  This is more than sufficient to conclude that Kansas has "sufficient contacts" with the loan transactions and thus that Kansas law applies.

Under Kansas law, it is clear that neither CIP Loan 1 nor CIP Loan 2 is usurious.  As the Kansas Defendants explain in their motion to dismiss -- an argument that Fasolino essentially concedes in his opposition -- the Kansas usury laws do not apply to businesses; rather, they apply only to individuals and, furthermore, only when the purpose of the loan is "primary for personal, family, or household purposes."  Kan. Stat. Ann. § 16-207(e)(West 2013).[1]  Fasolino does not dispute that he acquired CIP Loan 1 and CIP Loan 2 for business purposes.  Thus,

_____

[1] At the time when CIP Loan 1 and CIP Loan 2 were executed, this language appeared in § 16-207(f) of the Kansas Statutes.  A statutory amendment, effective July 1, 2013, shifted the language to § 16-207(e).

Fasolino's allegation of usury fails with regard to CIP Loan 1 and CIP Loan 2.

Fasolino presents only one argument in response: that, because the loan transaction was executed in New Jersey and the loaned funds were delivered in New Jersey, New Jersey law should apply.  Under New York conflict-of-law principles, however, the question is not which state has the "greatest" contacts with the transaction but whether the state specified in a valid choice-of-law provision has "sufficient" contacts with the transaction. Finucane v. Interior Constr. Corp., 695 N.Y.S.2d 322, 325 (1st Dep't 1999).  As explained above, Kansas has sufficient contacts, which is all that New York requires to apply the Kansas choice-of-law provision.

Additionally, the sole citation provided by Fasolino in support of his argument, Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, No. 04-cv-5605 (SAS), 2004 WL 1616379, at *4 (S.D.N.Y. July 19, 2004), is readily distinguishable.  In that case, which is not binding authority here, the court rejected a German choice-of-law provision when the sole contact between Germany and the case was that one party was a German corporation.  Here, by contrast, CIP is not only incorporated in Kansas but actually has its principal place of business there.  The location of a principal place of business is significant and generally suffices to establish "sufficient contacts" for

11

purposes of New York conflicts-of-law analysis.  See Finucane,
695 N.Y.S.2d at 325; see also Cap Gemini Ernst & Young, U.S.,
L.L.C. v. Nackel, 346 F.3d 360, 366 (2d Cir. 2003).  For these
reasons, under Kansas law, CIP Loan 1 and CIP Loan 2 were not
usurious.

Finally, even if New Jersey law were to apply to CIP Loan 1
and CIP Loan 2, the loans would not be usurious under that
state's laws.  New Jersey's civil usury statute states that

> Notwithstanding the provisions of paragraph (a) or (b)
> of this section, contracts for the following classes
> or types of loans may provide for any rate of interest
> which the parties agree upon, and interest at any such
> rate may be taken, notwithstanding that it exceeds a
> rate limited by paragraph (a) or (b) of this section:
>
> (1) Loans in the amount of $50,000.00 or more, except
> loans where the security given is a first lien on real
> property on which there is erected or to be erected a
> structure containing one, two, three, four, five or
> six dwelling units, a portion of which structure may
> be used for nonresidential purposes.  The rate of
> interest stated in such contract upon the origination
> of such loans may be taken notwithstanding that
> payments thereon reduce the amount outstanding to less
> than $50,000.00.

N.J. Stat. Ann. § 31:1-1(e)(1)(West 2013)(emphasis added).
Neither CIP Loan 1 nor CIP Loan 2 was secured by first liens on
real property, and both exceeded the $50,000 cutoff for the
protection of New Jersey's usury laws.  Accordingly, under New

Jersey law, the loans were not usurious.  Counts Three and Four
are therefore dismissed.[2]


2. Loan Agreement

In Count Five, Fasolino alleges that the CIP component of
the Loan Agreement is usurious.  Specifically, he alleges that
the CIP component was merely a "re-casting" of the prior CIP
loans.  Because those loans were, he contends, usurious, the CIP
component of the Loan Agreement is also usurious and thus void.

Here, unlike as with CIP Loan 1 and CIP Loan 2, the parties
do not dispute the choice-of-law question.  Both parties apply
New York law, which is undoubtedly correct as the Loan Agreement
includes an express choice-of-law provision stating that the law
of New York governs.  The question, then, is whether the CIP
component of the Loan Agreement is usurious under New York law.

It is not.  Section 5-501(6)(b) of New York General
Obligations Law reads as follows:

> No law regulating the maximum rate of interest which
> may be charged, taken or received, including section
> 190.40 and section 190.42 of the penal law, shall
> apply to any loan or forbearance in the amount of two
> million five hundred thousand dollars or more.  Loans
> or forbearances aggregating two million five hundred
> thousand dollars or more which are to be made or

---

[2]  Fasolino states, without explanation, in his opposition that
CIP Loan 1 "is void ab[]initio under New York law" and again
that CIP Loan 2 "is similarly void and unenforceable under New
York law."  There is, however, no basis whatsoever to apply New
York law to these transactions, for the reasons explained above.

> advanced to any one borrower in one or more
> installments pursuant to a written agreement by one or
> more lenders shall be deemed to be a single loan or
> forbearance for the total amount which the lender or
> lenders have agreed to advance or make pursuant to
> such agreement on the terms and conditions provided
> therein.

N.Y. Gen. Oblig. Law § 5-501(6)(b) (McKinney 2013).  This provision has two important elements.  First, it calls for treating loans from multiple lenders advanced to "one borrower" and "pursuant to a written agreement" as "a single loan." Second, if the aggregate total for this single loan exceeds $2,500,000, it is not subject to the protection of New York's usury laws.

The Loan Agreement meets both elements.  Two loans, one from CIP and one from Grover, were extended to one borrower, Fasolino, in one written agreement, i.e., the Loan Agreement. Accordingly, the two loans are treated as one, and -- more important -- the loan amounts are aggregated when assessing whether the loan exceeds the $2,500,000 cutoff for the protection of New York's usury laws.  Although the parties dispute whether the aggregate total should be determined by the amount actually loaned ($5,000,000) or the amount agreed to be loaned ($7,750,000), the dispute is irrelevant; in either situation, the aggregate total for the Loan Agreement exceeds the $2,500,000 cutoff for the protection of New York's usury

14

laws.  The CIP component of the Loan Agreement is therefore not usurious under New York law.

Fasolino offers only one argument in response: that the $2,250,000 portion of the Loan Agreement that represents CIP's extension of the prior loans should not qualify for aggregation under § 5-501(6)(b) because the prior loans were usurious. Although Fasolino cites no law to support his statutory reading of § 5-501(6)(b), he makes a reasonable observation that New York's usury laws would be somewhat weakened if a lender could combine multiple individually usurious loans into a package exceeding $2,500,000 and thus avoid those laws altogether.  In any event, this is not the case to resolve that issue, as the prior CIP loans were not usurious, for reasons explained above. Thus, aggregation does apply, the Loan Agreement is not usurious under New York law, and Count Five is dismissed.

### 3. Count Seven

All that remains of the usury-related counts is Count Seven. In Count Seven, Fasolino sues Grover (and perhaps the remaining defendants) for acting in concert to structure the Loan Agreement to avoid the protection of New York's usury laws. He seeks that the Grover loan component of the Loan Agreement to be deemed void, to recoup his payments, and further damages.

On this count, the Fasolino Complaint is very unclear.  To
begin, Fasolino fails to specify who exactly is being sued in
this count.  Although Grover is named multiple times, some
allegations list other third party defendants, including CIP and
the Lawyer Defendants.  Additionally, although Fasolino alleges
that it was wrongful for these parties to act in concert to
"raise the gross amount loaned to Fasolino to reap greater fees
on behalf of themselves" and "to place the gross loan amount
above the threshold" for the protection of the usury laws,
Fasolino fails to specify any legal or equitable cause of action
that provides him with relief in such a circumstance.  A lender
is generally permitted to structure its transactions to maximize
its profits and minimize its liability.  It is equally true,
however, that the law places various limits on how lenders may
achieve these goals.  The line between permissible and
impermissible conduct defines a large body of law, and yet the
Fasolino Complaint makes no attempt whatsoever to explain or
even provide basic notice as to why or how the defendants'
conduct is impermissible, rather than permissible.  Under our
federal system of notice pleading, the Fasolino Complaint is
therefore insufficient.

Two additional arguments support this conclusion.  First,
even after the Kansas Defendants identified these deficiencies
in their initial motion to dismiss and Fasolino availed himself

16

of the opportunity to amend, he made no attempt to remedy these pleading errors.  Second, the Lawyer Defendants argued in their motion to dismiss that Count Seven should be dismissed because New York does not recognize an independent civil tort of conspiracy.  Fasolino, however, made no attempt to defend this count in his opposition.  Thus, in addition to improperly pleading Count Seven, Fasolino has failed to repair or defend it in his motion papers.  Thus Count Seven is dismissed.

B. Legal Malpractice: Counts One and Two

Having resolved the usury counts, the next substantive issue is the legal malpractice claim against Weiss in Count One. Both parties assume that New York law applies to the legal malpractice claim, but they do not directly address the choice-of-law issue.  "Under New York choice of law rules . . . where the parties agree that New York law controls, this is sufficient to establish choice of law."  Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).  Such agreement may be implicit.  Id.  The parties having assumed that New York law controls, under the New York choice-of-law rule, New York law applies.  See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

Under New York law, to prevail on a claim for legal malpractice, a plaintiff must establish: "(1) attorney

17

negligence; (2) which is the proximate cause of a loss; and (3) actual damages." Nordwind v. Rowland, 584 F.3d 420, 429 (2d Cir. 2009)(quoting Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).  Here, Fasolino's claim fails at the first element, negligence.

The Fasolino Complaint alleges that Weiss operated under an undisclosed conflict of interest whereby he actually served Weiss's counter-party, Tripoint, and inter alia acted to structure the transaction to avoid the protection of New York's usury laws.  Specifically, Fasolino alleges that Weiss (1) actively structured the transaction to prevent Fasolino from having the protection of New York's usury laws; (2) failed to advise Fasolino that the interest rates were usurious under New York law; (3) failed to negotiate for lower rates that were not usurious; and (4) failed to advise Fasolino that he was pledging all of his assets as collateral on the usurious loan.

Although the parties make much of the conflict of interest alleged by Fasolino, that issue is ultimately irrelevant to resolving the adequacy of Fasolino's pleadings.  All that matters is Fasolino's allegations regarding Weiss's conduct, not Weiss's motivation.  Specifically, the question is whether Weiss "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." Wyly v. Weiss, 697 F.3d 131, 141 (2d Cir. 2012) (quoting AmBase Corp.

v. Davis Polk & Wardwell, 866 N.E.2d 1033, 1036 (N.Y. 2007))
(emphasis omitted).

The answer here is no.  With respect to Fasolino's first
three allegations regarding negligence, all three allegations
presume that the Loan Agreement was usurious.  That is, the
premise for Weiss's alleged negligence is that he either
actively promoted the usury problem or failed to identify and
address it.  It has been established above, however, that there
was no usury problem, as the Loan Agreement was not usurious
under New York law.  Accordingly, where there is no legal
problem, Weiss cannot be negligent for his conduct related to
the problem.

The fourth allegation relates to Weiss's supposed failure
to inform Fasolino as to the collateral he was promising in the
Loan Agreement.  The standard for attorney negligence is a high
one.  See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d
328, 337 (2d Cir. 2006) ("A complaint that essentially alleges
either an 'error of judgment' or a 'selection of one among
several reasonable courses of action' fails to state a claim for
malpractice." (quoting Rosner v. Paley, 492 N.Y.S.2d 13, 14
(1985))); Bernstein v. Oppenheim & Co., 554 N.Y.S.2d 487, 489
(1st Dep't 1990) ("[A]n attorney is not held to the rule of
infallibility and is not liable for an honest mistake of
judgment, where the proper course is open to reasonable

doubt."). Under this high standard, the question is whether Fasolino has adequately pleaded that Weiss's conduct was objectively unreasonable.

While failing to explain the terms of a loan may be a valid basis for a negligence claim in a transaction involving an unsophisticated party (such as an ordinary consumer), it is undisputed that Fasolino is a sophisticated business party. In such a case, it is not objectively unreasonable for an attorney to believe that his client is fully capable of understanding such a basic loan term as collateral. "The general rule is that an attorney may be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Bernstein, 554 N.Y.S.2d at 489-90. Having failed to establish the prima facie validity of the legal malpractice tort, Fasolino cannot be granted relief and Count One is dismissed.

As to Count Two in the Fasolino Complaint, it is directed at HTW based on respondeat superior liability for Weiss's tortious conduct. It therefore rises and falls with the legal malpractice claim in Count One. Because Fasolino's legal malpractice claim fails, Count Two against HTW also fails.

C. Remaining Claims: Counts Six, Eight, Nine

The remaining claims in the Fasolino Complaint must also be dismissed.  Count Six alleges that Moore and Sunflower Capital "extort[ed]" Fasolino into paying them $350,000 for extending CIP Loan 2 in the Loan Agreement.  New York, however, does not provide a private right of action for extortion.  Minnelli v. Soumayah, 839 N.Y.S.2d 727, 728 (1st Dep't 2007).  Nor does New Jersey.  Dello Russo v. Nagel, 358 N.J. Super. 254, 267 (App. Div. 2003).

To the extent that Kansas law is applicable, this Court is unable to find any reference in Kansas case law to a private cause of action for extortion.  The closest case, a 1979 decision by the Kansas Court of Appeals, suggests that there may be no such claim.  In a discussion regarding whether a plaintiff is able to bring a civil cause of action for "oppression," the court makes reference to "extortion" but refers to it as the "crime of extortion."  Young v. Hecht, 597 P.2d 682, 687 (Kan. Ct. App. 1979).  Were there a civil extortion cause of action under Kansas law, the court would likely have referenced it.  As with Count Seven above, the Kansas Defendants pointed out these deficiencies in his pleading in their initial motion to dismiss. Again, Fasolino made no attempt to remedy these deficiencies in his amended filing.  Accordingly, Count Six is dismissed.

Counts Eight and Nine are, as discussed above, purely duplicative.  These counts simply restate the allegations made in the prior counts and then request the same relief requested in the prior counts.  As Counts One through Seven have now been dismissed, Counts Eight and Nine are also dismissed.

D. Confession of Judgment

Although the prior analysis resolves the entirety of the third party complaint, one further issue merits discussion. During the pendency of this action, CIP and Grover have acquired a state court judgment against Fasolino in the amount of $5,000,000 plus interest.  At the time of the execution of the Loan Agreement, Fasolino signed a "Confession of Judgment" document with blank spaces for the amount due.  Subsequent to the filing of Tripoint's suit in the underlying case, CIP and Grover completed the "Confession of Judgment" document and filed it (bearing Fasolino's signature) in New York Supreme Court. Judgment was entered in New York on May 14, 2013.  The Kansas Defendants argue that the Confession of Judgment renders the third party claim either moot or precluded under res judicata.[3]

_____

[3] The Kansas Defendants also cite "collateral estoppel" but this is wholly inapplicable.  The critical distinction between collateral estoppel and res judicata -- or "issue preclusion" and "claim preclusion" as these doctrines are now known -- is that the former doctrine requires the matter to have been "actually litigated."  And it is blackletter law that, because

Without reaching the mootness question, this Court agrees that it is bound by res judicata to accept the properly filed Confession of Judgment as fully resolving the question of Fasolino's liability to CIP and Grover for the transaction in question.  The law governing the doctrine of res judicata in a diversity action is "the law that would be applied by state courts in the State in which the federal diversity court sits." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001).  New York courts treat confessions of judgments like consent decrees; these are, in turn, treated the same as a final judgment after trial.  See Canfield v. Elmer E. Harris & Co., 170 N.E. 121 (N.Y. 1930)("A judgment by confession stands in much the same position as one by stipulation or consent and is conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim.").[4]  Such judgments

---

no matters are "actually litigated" in a confession of judgment, it does not collaterally estop a bound party from arguing the merits of an issue.  Arizona v. California, 530 U.S. 392, 414 (2000).

[4] Despite its early origin, Canfield continues to be cited as controlling authority in federal and New York courts.  See, e.g., Levy v. U.S., 776 F. Supp. 831, 835 (S.D.N.Y. 1991); In re Madison 92nd Street Associates LLC, 472 B.R. 189, 194 (Bankr. S.D.N.Y. 2012) ("Under New York law, a consent judgment has the same res judicata effect as a judgment on the merits."); Maspeth Federal Sav. and Loan Ass'n v. Bah, 816 N.Y.S.2d 683 (1st Dep't 2006).

are subject to direct challenge at the time of their entry.[5]  But after the time to challenge has expired or the challenge has been denied, the judgment is final under longstanding res judicata principles.  Id.

Res judicata permits exceptions, however, and New York allows collateral attack on prior final judgments in certain instances, such as when the imposing court lacked jurisdiction. See, e.g., Saud v. Bank of New York, 929 F.2d 916, 919 (2d Cir. 1991).  Conspicuously absent in any of Fasolino's motions is any allegation or contention that the New York Supreme Court lacked jurisdiction to enter the Confession of Judgment against him. To the contrary, Fasolino's sole basis for his attack on the Confession of Judgment is that the underlying loans are usurious and thus unenforceable.  This is a classic merits-based argument, which must be raised in a direct attack on a judgment, not in a collateral attack.  Because Fasolino has not presented an allegation that would permit this Court to draw an exception to New York's res judicata principles, this Court is bound by the Confession of Judgment.

---

[5] Under New York civil procedure, "[g]enerally, a person seeking to vacate a judgment entered upon the filing of an affidavit of confession of judgment must commence a separate plenary action for that relief."  Regency Club at Wallkill, LLC v. Bienish, 942 N.Y.S.2d 894, 894 (2d Dep't 2012).  The challenge can be made by motion to vacate the judgment in certain instances.  See, e.g., Cole-Hatchard v. Nicholson, 901 N.Y.S.2d 660 (2d Dep't 2010).

Finally, even if collateral attack on the Confession of Judgment were permitted, Fasolino would still fail.  Fasolino's sole basis for his attack on the Judgment is that the underlying loans are usurious.  For the reasons explained above, they are not.  Therefore, Fasolino's collateral attack would fail in any event, and this Court would be bound by the Confession of Judgment.

CONCLUSION

The third party motions of June 3, 2013 and July 12, 2013 to dismiss are granted in full.  The Fasolino third party complaint is dismissed in its entirety.


SO ORDERED:

Dated:     New York, New York
           October 18, 2013


_____
          DENISE COTE
     United States District Judge